LAW OFFICES OF

# JOSHUA L. DRATEL, P.C.
A PROFESSIONAL CORPORATION

29 BROADWAY
Suite 1412
NEW YORK, NEW YORK 10006
---
TELEPHONE (212) 732-0707
FACSIMILE (212) 571-3792
E-MAIL: JDratel@JoshuaDratel.com

JOSHUA L. DRATEL                                                                                                                     STEVEN WRIGHT
—                                                                                                                      *Office Manager*
LINDSAY A. LEWIS
WHITNEY G. SCHLIMBACH

June 23, 2016

**BY ECF**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

                          Re:    *United States v. Derrick Williams*,
                                       S5 16 Cr. 170 (JGK)

Dear Judge Koeltl:

      This letter is submitted in reply to the government's June 16, 2016, sentencing memorandum (Docket # 131), and addresses four issues raised by the government: (1) whether the Court can and/or should impose Mr. Williams's sentence in this case consecutive or concurrent with any sentence in a pending New York State case for which there has not yet been any disposition; (2) the role, efficacy, and applicability of general deterrence in this case; (3) recidivism; and (4) the collateral consequences Mr. Williams faces as a result of his conviction.

      As detailed below, it is respectfully submitted that (1) if the Court exercises its discretion, Mr. Williams's sentence in this case should be imposed concurrent with any New York State court sentence; (2) general deterrence is a nullity in this case, and increasing Mr. Williams's sentence for purposes of general deterrence would create an unwarranted disparity; (3) research establishes that Mr. Williams is reaching the age at which recidivism declines dramatically; and (4) the collateral consequences Mr. Williams will suffer are genuine, and constitute additional punishment (rather than, as the government posits, some form of specific deterrence).

|  |  |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | The Honorable John G. Koeltl<br>United States District Judge<br>Southern District of New York<br>June 24, 2016<br>Page 2 of 12 |

**A.**     *The Court Should Reject the Government's Request That Mr. Williams's Sentence Be Imposed to Run Consecutive to Any Sentence Imposed on Pending State Charges*

      The government has requested, in its Memorandum of Law (hereinafter "Gov't Memo"), at 12, that the Court "order that its sentence be served consecutively" to any sentence that may be imposed in Mr. Williams's pending New York State case. However, that is not only unwarranted in light of the sentencing factors in 18 U.S.C. §3553(a) (which are discussed in my June 10, 2016, letter [Docket # 130) Williams's Sentencing Memorandum, but also, for reasons set forth below, inappropriate given that the pending state charges have not yet been adjudicated.

      The legal predicate for the government's request is the Supreme Court's opinion in *Setser v. United States*, ___ U.S. ___, 132 S. Ct. 1463 (2012). However, while the Court possesses the authority to impose its sentence herein consecutive to or concurrent with any sentence in Mr. Williams's pending New York State case, the exercise of that authority is discretionary, and if utilized must "consider, as to each offense for which a term of imprisonment is being imposed, the factors set forth in section 3553(a)." 132 S.Ct. at 1473; *see also* 18 U.S.C. § 3584(b) ("[t]he court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider . . . the factors set forth in section 3553(a)).

      **1.**     *The Principles Set Forth In* **Setser** *and §3584(a)*

      In *Setser*, the defendant was sentenced on a drug charge by the district court to 151 months to run consecutively to any sentence imposed in his pending state parole revocation proceeding and concurrent to any sentence imposed in his related state drug case. *Id*., at 1466 (all three charges addressed the same conduct). The defendant was subsequently sentenced by the state court to 5 and 10 years to run concurrently, rendering the federal sentencing order impossible to carry out, and thus, the defendant argued, unreasonable. *Id*., at 1467.

      The Supreme Court affirmed the district court order that the federal sentence run consecutively to any sentence imposed in the defendant's probation revocation proceeding, concluding that "nothing in the Sentencing Reform Act, or in any other law, [including the provision governing the imposition of consecutive and concurrent sentences contained in 18 U.S.C. § 3584(a)] . . . show[s] that Congress foreclosed the exercise of district courts' . . . discretion" to order that a federal sentence run consecutively or concurrently with an "anticipate[d]" state sentence that "has not yet been imposed." 132 S.Ct. at 1468, 1473.

      The Court in *Setser* explained that the conflict arising from the subsequent state court decision to run the two state sentences concurrently did not render the federal sentencing order unreasonable, but rather gave the Bureau of Prisons the authority to "determine how long the

LAW OFFICES OF

**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 3 of 12

District Court's sentence authorize[d] it to continue [the defendant]'s confinement." *Id*., at 1473.

The Court in *Setser* also noted that "each sovereign [state and federal] . . . is responsible for the administration of [its own] criminal justice syste[m.]" Thus, if a defendant serves his state sentence first and is then transferred to federal custody, "it will always be the Federal Government . . . that decides whether he will receive credit," for his state time, and "if he serves his federal sentence first, the State will decide whether to give him credit . . . without being bound by what the district court or the Bureau said on the matter." *Id*., at 1471.

In reaching its conclusions, the Court in *Setser* dismissed the argument made by the defendant, the government, and the dissent that "when it comes to sentencing, later is always better because the decisionmaker has more information," although the majority acknowledged that this is "undoubtedly true." *Id*., at 1471.

Indeed, the dissent in *Setser*, elaborating on its position that federal district court discretion to impose a sentence concurrently or consecutively with an anticipated state sentence is at odds with the goals underlying the Sentencing Reform Act, pointed out that the district court necessarily lacked sufficient knowledge regarding

> for example, (a) what the sentence will be, (b) whether the behavior underlying that later sentence constitutes part of the same course of behavior that underlies the present sentence or, instead is totally separate from the behavior underlying the present sentence, or (c) is partly the same and partly different. Even if the judge has an idea about what will happen, he does not know *precisely* what will happen; and precision in this matter is important.
>
> In a word, the sentencing judge normally does not yet know enough about what will happen in the sentencing-proceeding-yet-to-come to be able to construct a sentence that meets the Guidelines' instructions and which, in doing so, helps to assure that different individuals who engage in the same criminal behavior will typically receive roughly comparable sentences.

132 S.Ct. at 1476 (Breyer, J., *dissenting*).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 4 of 12

### 2. *Second Circuit Law Before and After* Setser

Prior to *Setser*, the Second Circuit adhered firmly to the principle that § 3584(a) did "not authorize a district court to direct that a defendant's federal sentence run consecutively to a not-yet-imposed state sentence." *United States v. Donoso*, 521 F.3d 144, 149 (2d Cir. 2008); *see also United States v. Gonzalez*, 291 F.App'x 392, 394-95 (2d Cir. 2008) (order that 2002 federal sentence for prison assault run consecutive to anticipated re-sentence for 1994 state conviction, which had been vacated, "was error, because at the time of sentencing for the prison assault, [defendant] was not yet under a sentence for the 1994 conviction").

Even after *Setser*, the Second Circuit, although acknowledging the authority described by the Supreme Court, has been cautious when interpreting the scope of that discretion. For instance, because district courts so often remain silent at sentencing on the issue of consecutive and/or concurrent sentences, the Second Circuit recently affirmed its position that when "the federal court is silent as to whether [a federal sentence] should be concurrent or consecutive" with an unimposed state sentence, "the presumption in § 3584(a) that those sentences must run consecutively does not apply." *Evans v. Larkin*, 629 F. App'x 114, 115 (2d Cir. 2015), *citing McCarthy v. Doe*, 146 F.3d 118, 121-23 (2d Cir. 1998). The Second Circuit noted that "[i]n such cases, the BOP may designate a prisoner's state prison as a place of federal confinement under 18 U.S.C. §3621(b)." *Id*.

Unsurprisingly then, district courts commonly make the decision to designate a federal sentence concurrent or consecutive to an (at the time) anticipated state sentence in the context of an inmate's request to the BoP to retroactively designate a state facility for service of a federal sentence, during which process the BoP seeks the recommendation of the federal sentencing court. *See United States v. Alvarez*, 2015 WL 1851658, at *3 (S.D.N.Y. Apr. 17, 2015) (court recommended partially concurrent sentences "because the BOP considers and, arguably must comply with, the sentencing judge's position"); *see also United States v. Mulligan,* 2014 WL 5768758, *1–2 (S.D.N.Y. Nov. 4, 2014) (after state court ordered consecutive sentences, District Court recommended that BoP retroactively designate part of petitioner's federal sentence as concurrent to his state sentence). *See also Martinez-Cisneros v. Hufford,* 2014 WL 3610797 (S.D.N.Y. Jul. 18, 2014), *report and recommendation adopted by* 2014 WL 3854077 (S.D.N.Y. Aug. 5, 2014) (state court recommended concurrent sentences and in accordance with sentencing judge recommendation that sentences run concurrently, BoP retroactively designated federal and state sentence concurrent).

Also, Southern District courts have explained their silence at the time of sentencing by pointing out that – as is the case here – "the Petitioner had not yet been adjudicated guilty of the state charges against him, and thus the Court had no basis upon which to consider any future

LAW OFFICES OF  
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl  
United States District Judge  
Southern District of New York  
June 24, 2016  
Page 5 of 12

sentence that might be imposed by the state in relation to the pending charges." *Benitez v. United States*, 2014 WL 6814358, at *3 (S.D.N.Y. Dec. 2, 2014). *See also Alvarez*, 2015 WL 1851658, at *4 ("[a]t the time of the federal sentencing . . . although the Court was aware that state charges were pending, they were only charges; there had been no plea or conviction . . . [the defendant] had not yet been adjudicated guilty by the State Court, much less received his sentence").

In addition, despite BoP's routine solicitation of a district court's recommendation, and the Supreme Court's indication that the discretion to make the determination belongs to the federal sentencing court, the Second Circuit has confirmed that "when a federal sentencing court is silent as to whether its sentence should be served consecutively to or concurrently with an anticipated state sentence, the BOP is authorized to make that determination." *Cruz v. Walsh*, 633 F. App'x 794, 795 (2d Cir. 2015).

      3.     *Mr. Williams's Sentence Herein Should Not Be Imposed Consecutive to Any Potential Sentence In His Pending, Unresolved New York State Case*

In light of both the Second Circuit's cautious and prudent approach to a court's authority to designate federal sentences as concurrent or consecutive to anticipated state sentences, and the district courts' expressed reservations with respect to the appropriateness of making that designation even before conviction in the state case, it is respectfully submitted that Mr. Williams's sentence in this case should not be imposed consecutive to any potential sentence in his still-unresolved state case.

The reasons for such forbearance are both practical and equitable. As detailed by the dissent in *Setser*, the federal sentencing process, and the Guidelines that shape it, require a detailed and individualized analysis which must simultaneously account for offense conduct and offender characteristics. 132 S.Ct. at 1477-79 (Breyer, J., *dissenting*). The Second Circuit's position prior to the Supreme Court decision in *Setser*, further confirms that such a broad grant of discretion is incompatible with the principles of just sentencing. *See Donoso*, 521 F.3d at 148 (the restricted interpretation of § 3584(a) was "based on its plain language and common sense," and "confirmed by [its] legislative history"). That analysis cannot be fairly and appropriately carried out if it accounts for a *pending* state charge for which little information other than the penal code section is available.

In that context, at this stage the Court does not know the impact a consecutive sentence might exert on the outcome of the state case. For example, the state court could, in sentencing Mr. Williams if he is convicted in the state case, be constrained by New York State rules – due either to the nature of the offense of conviction or Mr. Williams's prior record – to impose a mandatory minimum, which could either or both be in conflict with this Court's intentions with

| | |
|---|---|
| LAW OFFICES OF<br>**JOSHUA L. DRATEL, P.C.** | The Honorable John G. Koeltl<br>United States District Judge<br>Southern District of New York<br>June 24, 2016<br>Page 6 of 12 |

respect to the ultimate length of Mr. Williams's incarceration, and/or impair the ability of the parties in the state case to reach a pretrial disposition.

There is also the issue of comity: the state court judge, intimately familiar with Mr. Williams's state case, is in the best position to decide whether any sentence in that case should be imposed consecutive or concurrent with Mr. Williams's sentence herein. Indeed, a consecutive sentence mandated by a federal court could frustrate the objectives of the New York State court system (by discouraging pretrial disposition, or limiting the type of offenses available for such a disposition), and its penal system (by compelling the state to house an inmate at its own cost longer than the State would otherwise think appropriate).

Moreover, the fact that Mr. Williams remains in the primary custody of New York State, despite his transfer to the Metropolitan Correctional Center (hereinafter "MCC") following his federal arrest, constitutes an additional reason for denying the government's request for consecutive sentences. Mr. Williams has spent the past 15 months in pre-trial detention, yet because his state and federal offenses are unrelated, it is not mandatory that he receive *any* credit or adjustment to his federal sentence for time served prior to the imposition of sentence in this case, even if his state sentence is ultimately less than the time spent in state custody. *See* U.S.S.G. § 5G1.3(b)-(c).

Also, as set forth in my June 10, 2016, letter, at Point II, analysis of the § 3553(a) factors, which need not be revisited in detail herein, warrants a sentence below the Guidelines range. However, even if the Court disagrees with that analysis, the relevant sentencing factors certainly do not warrant a sentence either at the top of the Guidelines range and/or consecutive to any sentence imposed by New York on Mr. Williams's state charge.

Indeed, in light of the current national recognition – joined, as discussed **post**, at 7-8, by the then-Attorney General of the United States and at least two Supreme Court justices – that extended incarceration is counter-productive, the government's request for a sentence at the top of Mr. Williams's Guidelines range, and one imposed consecutive to any sentence in the pending state case, is not merely ill-informed, inconsistent with the position of premier criminal justice figures in the executive and judiciary branches, and contrary to sound public policy, but also gratuitous and even cruel.

However, in the event the Court decides to exercise its discretion with respect to ordering whether Mr. Williams's federal sentence run either concurrently or consecutively to any state sentence he may receive, Mr. Williams requests that the Court order the sentences to run concurrently.

<table>
<tr><td>

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

</td><td>

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 7 of 12

</td></tr>
</table>

**B.**     *A Longer Sentence for Mr. Williams Would Not Achieve General Deterrence, But Would Create An Unwarranted Disparity In His Sentence*

The government's reliance on the concept of general deterrence as a basis for imposing a longer sentence on Mr. Williams is also misguided.  Notwithstanding the study cited by the government, which assessed the recidivism rates of only those prisoners *in Italy* released pursuant to an Italian clemency bill that reduced prison sentences by three years across the board, research has consistently established that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects."  Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006).

In addition to the empirically supported and generally accepted notion within the social science community that general deterrence is not achieved via lengthier prison sentences,[1] the inefficacy of longer terms of imprisonment has not been lost on national public officials either.  There has been significant public backlash against the phenomenon of mass incarceration, which developed because of heavy reliance on deterrence and incapacitation to justify lengthy prison

---

[1] For example, "[t]hree National Academy of Science panels . . . reached that conclusion, as has every major survey of the evidence." Tonry, 34 Crime & Just. at 28.  *See also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("certainty of punishment is empirically known to be a far better deterrent than its severity.").  Also typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University.  *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (hereinafter "Cambridge Report"), summary available at <http://members.lycos.co.uk/lawnet/SENTENCE.PDF>.

The Cambridge Report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries.  *Id*. at 1.  It examined the effects of changes to both the certainty and severity of punishment. *Id*.  While there existed significant correlations between the *certainty* of punishment and crime rates, the "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *Id*. at 2.  As a result, the Cambridge Report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1.  *See also* Emily Bazelon, "First Words – The Soft Evidence Behind the Hard Rhetoric of 'Deterrence,'" *The New York Times Magazine*, October 20, 2015, available at <http://www.nytimes.com/2015/10/25/magazine/the-soft-evidence-behind-the-hard-rhetoric-of-deterrence.html>.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 8 of 12

terms. *See* National Academy of Sciences, *Growth of Incarceration In the U.S.* (hereinafter "*NAS Report*"), 2014, at 2, available at <http://www.nap.edu/download.php?record_id=18613>, at 2 ("[i]n 2012, close to 25 percent of the world's prisoners were held in American prisons, although the United States accounts for about 5 percent of the world's population. The U.S. rate of incarceration, with nearly 1 of every 100 adults in prison or jail, is 5 to 10 times higher than rates in Western Europe and other democracies").

Just over a year ago, Supreme Court Justices Anthony Kennedy and Stephen Breyer appeared before Congress. In response to a question from Rep. Steve Womack (R-AR) regarding whether the United States possessed the "capacity to deal with people with our current prison and jail overcrowding," Justice Kennedy testified, with respect to the corrections system, that "[i]n many respects, I think it's broken." *See, e.g.,* Jess Bravin, "Two Supreme Court Justices Say Criminal-Justice System Isn't Working," *The Wall Street Journal*, March 24, 2015 (hereinafter "*Two Supreme Court Justices*"), available at <http://www.wsj.com/article_email/two-supreme-court-justices-say-criminal-justice-system-isnt-working-1427197613-lMyQjAxMTA1NTIzNDUyNTQyWj>. *See also* <http://sentencing.typepad.com/sentencing_law_and_policy/2015/03/justices-kennedy-and-breyer-urge-congress-to-reform-broken-federal-criminal-justice-system.html>. Video of the Justices' testimony is available from C-SPAN at <www.c-span.org/video/?324970-1/supreme-court-budget-fiscal-year-2016>.

Justice Kennedy added that "[a]nd this idea of total incarceration just isn't working, and it's not humane." *Id*. Similarly, then-U.S. Attorney General Eric Holder, Jr., stated that "too many Americans go to too many prisons for far too long, and for no truly good law enforcement reason." *See* Editorial, "Smarter Sentencing," *The New York Times*, August 14, 2013, available at <http://www.nytimes.com/2013/08/14/opinion/smarter-sentencing.html>. What *The Times* editorial described as a "harsher-is-better mind-set" characterized by "widespread incarceration" is, according to AG Holder, "both ineffective and unsustainable."

The *NAS Report* reached similar conclusions: after observing that "[t]he growth in incarceration rates in the United States over the past 40 years is historically unprecedented and internationally unique," the *NAS Report* points out, at 154, that "[t]he deterrent effect of lengthy sentences is modest at best[,]" pointing to research and experiments "suggesting that the deterrent effect of sentence length may be subject to decreasing returns." *NAS Report*, at 2. Jeremy Travis, President of John Jay College of Criminal Justice in New York and co-editor of the *NAS Report*, told *The New York Times* last year "[t]he policy decisions to make long sentences longer and to impose mandatory minimums have had minimal effect on crime. . . . The research on this is quite clear." Erik Eckholm, "In a Safer Age, U.S. Rethinks Its 'Tough on Crime' System," *The New York Times*, January 13, 2015, available at

LAW OFFICES OF  
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl  
United States District Judge  
Southern District of New York  
June 24, 2016  
Page 9 of 12

<http://www.nytimes.com/2015/01/14/us/with-crime-down-us-faces-legacy-of-a-violent-age-.html>.

Indeed, there is not any viable evidence that a sentence a few months or even a year longer than another sentence of imprisonment – or that a sentence within a prescribed Guidelines range as opposed to a sentence below that range – achieves *any* measure of general deterrence. Even in theory, while "white collar" cases are considered paradigmatic for general deterrence (again, though, without any verifiable evidence), the Seventh Circuit, in a much more recent case than *United States v. Heffernan*, 43 F.3d 1144 (7th Cir. 1994) – cited by the Government's Sentencing Memorandum at 6 – has noted that "deterrence is sufficient when the penalty for a crime multiplied by the probability of apprehension equals the harm done – in this case, the taxes evaded." *United States v. Warner*, 792 F.3d 847 (7th Cir. 2015) (citations omitted).

In addition, while general deterrence is an express component of so many sentences, there is not, as discussed **ante**, any research or clinical evidence that justifies enhancing a particular defendant's sentence based on the prospect, entirely speculative and inchoate, of influencing some putative future wrongdoer, unidentified in any fashion, who has yet to commit, and perhaps even contemplate, a crime. Such a person's knowledge, motivation, and compelling factors that would lead to criminal conduct are simply unknown. Defendants should receive the sentence *they* deserve, and not have as a component of their sentence what some other, future, unknown defendant deserves.[2]

Indeed, general deterrence *creates* disparity because of its entirely subjective character. It is not standardized in the Guidelines or anywhere else; what one district court determines is sufficient to achieve general deterrence may be twice as much or twice as little as another court's determination. Nor is an enhancement for general deterrence quantifiable based on any rational or measurable metric. As a result, it represents a recipe for disparity untethered to any objective standard or ability to compare to other cases and defendants.

Conversely, it has been forecast that criminal justice legislation pending in Congress that would reform federal sentencing by releasing thousands of federal inmates earlier would reduced

---

[2] *See* Michael J. Lynch, *Beating a dead horse: Is there any basic empirical evidence for the deterrent effect of punishment?*, 31 Crime, Law & Social Change 347 (1999) (hereinafter "*Beating a dead horse*"), at 355 ("[m]ost assuredly, the assumption that a lesser increase in the rate of incarceration would have caused an inflated rate of offending *is just that* – an *assumption* or assertion *which cannot be demonstrated* except with data that make a great many assumptions about how individuals *might* behave given some set of *hypothetical* circumstances") (emphasis in original).

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 10 of 12

federal prison costs by $722 million over the next ten years.  *See* Julia Harte, "Congress Forecasters See Major Savings from Sentencing Reforms," *Reuters*, May 18, 2016, available at <http://www.reuters.com/article/us-usa-justice-sentencing-idUSKCN0Y92MC>.

Accordingly, the notion of deterrence does not justify the top of the Guidelines sentence proposed by the government, as there is no empirical support for the proposition that a below Guidelines sentence will not have the same deterrent impact.

C.   *Longer Terms of Imprisonment Do Not Reduce Recidivism*

Nor, according to "the best available evidence" does imprisonment "reduce recidivism more than noncustodial sanctions."  Francis T. Cullen *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).  *See also* Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005); Michael Tonry, *The Mostly Unintended Effects of Mandatory Penalties: Two Centuries of Consistent Findings*, 38 Crime and Justice: A Review of Research 102 (2009).

Again, Justice Kennedy concurred during his Congressional testimony last year, as *The Wall Street Journal* reported that "[i]n many instances, [Justice Kennedy] said, it would be wiser to assign offenders to probation and other supervised release programs."  *See Two Supreme Court Justices*.

Moreover, in the context of recidivism, defendants over 40 years of age present a dramatically reduced danger of recidivism.  Mr. Williams is presently 35 years old, which puts the peak years of potential recidivism behind him.  *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 ("[r]ecidivism rates decline relatively consistently as age increases," from 35.5% for those under age 21 to 9.5% for those over age 50) (available at <http://www.ussc.gov/publicat/Recidivism_General.pdf>).  *See also United States v. Nellum,* 2005 WL 300073, at *3 (N.D. Ind. 2005);  Daniel Glaser, *Effectiveness of A Prison and Parole System*, 36-37 (1964);  P.B. Hoffman & J.L. Beck, *Burnout – age at release from prison and recidivism*," 12 J. Crim.Just. 617 (1984); *United States v. Clark*, 289 Fed.Appx. 44, 48 (5th Cir. 2008) (unpublished opinion).

D.   *The Collateral Consequences Mr. Williams Faces Upon Conviction*

In its discussion of collateral consequences, the government creates a "straw man."  The discussion of collateral consequences Mr. Williams will suffer was not included in my June 10, 2016, to argue, as the government submits, that Mr. Williams will be deterred from future

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 11 of 12

criminal conduct.

Instead, it was included to point out the additional punishment that will attach to this conviction. As the Court in *United States v. Nesbeth*, 2016 WL 3022073 (E.D.N.Y. May 24, 2016), explained, "there is a broad range of collateral consequences that serve no useful function other than to further punish criminal defendants after they have completed their court-imposed sentences." *Id*., at *1. That is true here as well.

Nor does the fact that the defendant in *Nesbeth* was a first-time offender lessen the general adverse impact of collateral consequences on any individual convicted of a crime. *See Nesbeth*, 2016 WL 3022073, at *3 ("[a] criminal record today authorizes precisely the forms of discrimination we supposedly left behind—discrimination in employment, housing, education, public benefits, and jury service"). The fact that Mr. Williams has suffered the attachment of collateral consequences as the result of a previous conviction does not reduce the fact that additional consequences will attach as a result of this specific conviction – Mr. Williams's first in the federal system. Nor is there any indication that any of his prior sentences have accounted *at all* for the additional punishment exerted by collateral consequences.

Accordingly, a sentence "sufficient but not greater than necessary" to achieve the goals of punishment requires consideration of collateral consequences because they impose additional punishment and pose significant obstacles to rehabilitation, the prospect of which is further diminished by a lengthy prison sentence.

In that regard, the monetary penalties the government seeks are also disproportionate, and would generate a perpetual sanction Mr. Williams will never escape. Again, that does not promote the objectives of either sentencing or a sound, coordinated public policy with respect to the re-entry of offenders into their communities. *See, e.g.,* Robert E. Rubin, Op-Ed, "How to Help Former Inmates Thrive," *The New York Times*, June 3, 2016, available at <http://nyti.ms/1X24zsB>; Nicholas Turner, Op-Ed, "A Home After Prison," *The New York Times*, June 21, 2016, available at <http://nyti.ms/28JpmfQ>.

The government's cavalier acknowledgment at 11 of the Government's Sentencing Memorandum, that this is a case "where the defendant lacks the resources to pay the anticipated forfeiture and restitution judgments," and that "therefore [the judgments] will have little practical impact on him," merely confirms two points: (1) that the financial penalty will shadow Mr. Williams for the rest of his life, and (2) that the government itself recognizes explicitly Mr. Williams does not have the ability to pay, and tacitly, that the amounts requested are merely statistics and not reflective of the punishment that should be meted out to Mr. Williams.

LAW OFFICES OF
**JOSHUA L. DRATEL, P.C.**

The Honorable John G. Koeltl
United States District Judge
Southern District of New York
June 24, 2016
Page 12 of 12

## Conclusion

      Accordingly, for all the reasons set forth above, it is respectfully submitted that Mr. Williams should be sentenced to a term of imprisonment below the Guidelines range, and the Recommendation in the PSR.

      Respectfully submitted,

      Joshua L. Dratel

JLD/

cc:    Andrew D. Beaty
       Daniel C. Richenthal
       Assistant United States Attorneys