G6O3WILS                        Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                              16 CR 170 (JGK)

5    DERRICK WILLIAMS,

6              Defendant.

7    ------------------------------x

8                                             New York, N.Y.
                                              June 24, 2016
9                                             10:45 a.m.

10
     Before:
11
                     HON. JOHN G. KOELTL,
12
                                              District Judge
13

14                        APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     ANDREW BEATY
17        Assistant United States Attorney

18   JOSHUA L. DRATEL
     WHITNEY G. SCHLIMBACH
19        Attorneys for Defendant

20

21

22

23

24

25

G6O3WILS                        Sentence

1          THE DEPUTY CLERK:  United States of America v. Derrick

2    Williams.

3          MR. BEATY:  Good morning.  Andrew Beaty for the

4    government.

5          MR. DRATEL:  Good morning.  Joshua Dratel for

6    Mr. Williams who is seated beside me, and Whitney Schlimbach

7    who is an associate in my office.

8          THE COURT:  Good morning.  I received the presentence

9    report prepared May 3, 2016, revised May 31, 2016, together

10   with the sentencing recommendation and the addendum dated

11   May 31, 2016.

12         I received the defendant's submission dated June 10,

13   2016, the government's submission dated June 15, 2016, and the

14   defense submission dated June 23, 2016.

15         Let me ask at the outset, is there any dispute that

16   the appropriate amount of restitution that I should find is

17   $291,550 payable to the New York City Human Resources

18   Administration, and the amount of forfeiture that I should find

19   is $437,325?  Because I can tell you if there is a dispute,

20   then I'll have a Fatico hearing.

21         MR. DRATEL:  Give me one moment, your Honor.

22         THE COURT:  Sure.

23         (Defendant conferring with his counsel)

24         MR. DRATEL:  No, your Honor.

25         THE COURT:  Okay.  So, no dispute, no request for a

1  Fatico hearing.

2          MR. DRATEL:  That's correct, your Honor.

3          THE COURT:  I agree, by the way, that I should impose

4  a payment schedule, which is by virtue of the payment schedule

5  itself, a reasonable payment schedule in terms of what the

6  defendant could reasonably pay over time, even though, that

7  reasonable payment schedule would not pay off the amount of

8  restitution.  And in fact, under the way in which the statute

9  works, that would not be uncommon.

10         So that the defendant would be paying a reasonable

11 amount toward restitution, but the restitution would not be

12 eventually paid off.  Okay.

13         By the way, I really appreciated the thoroughness of

14 the parties' submissions.  They showed a great deal of

15 thoughtful work.

16         Mr. Dratel, have you reviewed the presentence report,

17 the recommendation, and the addendum, and discussed them with

18 the defendant?

19         MR. DRATEL:  I have your Honor.

20         THE COURT:  Do you have any objections?

21         MR. DRATEL:  None that I think were not incorporated

22 into the presentence report.

23         THE COURT:  Okay.  I'll listen to you for anything you

24 would like to tell me in connection with sentence, any

25 statement you'd like to make, anything at all you'd like to

1    tell me.

2            MR. DRATEL:  Thank you, your Honor.  I know the Court

3    has read the materials so I'm not going to revisit them.  Just

4    touch on a couple of things, some information I just received

5    from Mr. Williams today and some other issues that may not have

6    been fleshed out entirely in the papers.

7            In terms of Mr. Williams' physical condition, just to

8    give you a sense of what -- and I know the Court is experienced

9    in this, but in terms of this particular case just sort of the

10   roulette of being in MCC and medical treatment, is that he

11   finds out today as he's being brought here, that today is the

12   day he's supposed to go back to the hospital because they're

13   supposed to fit him with a different boot, because the boot he

14   has for his broken ankle is not the right boot.  So it's

15   supposed to be changed, so today is the day.  We don't know

16   when the next day will be that he'll get that.

17           He's had a flood in his cell for the past few days

18   which has covered the floor with water, which makes walking

19   around in crutches that much more precarious.  He's fallen.

20   So, he's supposed to go back and get X-rays.  He's got swelling

21   in his leg that the doctors don't believe is a good sign, so he

22   obviously is going to need this continual treatment for the

23   broken ankle he has suffered in MCC.

24           With respect to collateral consequences, some of them

25   actually do attach to this conviction, in particular one being

1    food stamp and health care programs.  The fraud that is related

2    to those programs gives those agencies the option of a

3    permanent bar, and certainly a bar that would make some of the

4    other collateral consequences that much more difficult.  In

5    other words, the Social Security consequences that result from

6    any conviction or from prior convictions, without all those

7    other potential safety net options, that becomes more severe.

8    Same thing is true with respect to employment, restrictions and

9    all of that.

10           As you narrow the ability of the defendant upon his

11   reentry to have some level of financial subsistence going

12   forward, that creates a crisis, as all of those particular

13   components are then removed from the constellation of possible

14   financial basis for financial subsistence.

15           With respect to the financial penalties, the

16   government's proposed restitution order has a 20 percent gross

17   monthly income payment schedule for restitution.  I think

18   that's --

19           THE COURT:  I would impose 10 percent.

20           MR. DRATEL:  Okay.  Thank you, your Honor.  I think

21   that's standard, even though, you know, so that's the standard.

22           With respect to Mr. Williams' background, and it's

23   very hard to determine chicken and egg and all of that in terms

24   of whether someone with his background, unfortunately, is

25   certain boxes that we see on a regular basis are checked off in

1    his background.  Parental substance abuse, alienation from

2    that, and just the series of mistakes that he has made, no

3    question.  And this is the most recent in that series.  And he

4    is going to do more jail time for it.

5           I think the approach that we take in our papers is

6    that he's already had a significant jail term.  That doesn't

7    seem to be the answer.  And a significant jail term -- there

8    has to be a better solution for this.  This goes also to the

9    consecutive versus concurrent part of it.  I'll talk about that

10   a little bit.  But I just think that there are limits to what

11   jail accomplishes.  Not just for Mr. Williams, but for the rest

12   of us and his family.

13          And there is a trend, I think, among particularly

14   people with a lot of authority, Supreme Court justices,

15   attorney generals, the president, who recognize, and I know

16   members of the court as well, have come to recognize that not

17   every problem is the nail for the hammer.  You know.

18          So, another aspect of this case is general deterrence

19   that the government raised.  No question, no one is here who is

20   not involved in this case.  No one is going to know.  No one

21   cares.  It doesn't matter.  And I think in our reply papers,

22   sort of -- the concept of general deterrence in a case like

23   this does not have any currency.  I just, there is no way to

24   measure it.  There is no way to measure why Mr. Williams would

25   get X-amount of general deterrence and someone else would get

Y.  There is no standard.  There is no quantification.  There

is no objectivity to it, and I don't think it is a factor in

this particular case.  This is his first federal case -- I'm

sorry.  Oh, I thought --

        THE COURT:  No.  General deterrence is always a

problematic factor in sentencing, because there is something

not quite right about using an individual defendant in order to

affect other people, as opposed to the individual defendant.  I

appreciate that general deterrence is in fact an acceptable aim

of sentence, but it is always problematic.

        MR. DRATEL:  Thank you, your Honor.  This is also his

first federal case.  And federal cases are different than state

cases, and the entire federal system in my experience has a

much more tonic effect on a defendant's evaluation of their

lives and the prospects for their own life and their families'

lives going forward.  Because of the gravity of the way cases

are treated here, because the stakes involved, and the

potential for more significant punishment, and I think that

that does have an impact on people, particularly people of

Mr. Williams' age, as he gets into an age area where all the

statistical information establishes recidivism does decline.

He's right at that age now.

        With respect to consecutive versus concurrent or

versus no preference at all, I think it would -- I just think

that for the reason we put in our reply, it really should be

G6O3WILS                          Sentence

```
 1   left up if the Court is -- rather than the Court exercise it,
 2   leave it up to the state judge to decide what's going to be,
 3   with respect.  Obviously, we want it concurrent just to make
 4   sure he doesn't do all that additional time.  Because right
 5   now, he's not going to start serving his federal sentence until
 6   the Court imposes judgment, because he's here as a primary
 7   custody New York State sentence.  So, he could actually do more
 8   than what his state sentence has been, because he's in custody
 9   this long.  He can do less.  The Court could be constrained by
10   mandatory minimums because of the nature of the case there,
11   because the nature of his record.
12            Queens is a difficult -- from my own experience,
13   Queens is not an easy jurisdiction for certain plea agreements.
14   They generally have a policy about timing and how far down
15   they'll go.  So all of these things may affect a state court
16   judge, and may actually affect the orderly process of a state
17   case.
18            THE COURT:  What is the maximum term that he's facing
19   on the state charges?
20            MR. DRATEL:  I don't know, your Honor.  But I do know
21   that for a gun charge it would be a minimum of a year.
22            THE COURT:  I'm sorry?
23            MR. DRATEL:  For a gun charge it would be a minimum of
24   a year but he also has a predicate violent conviction which
25   could raise that.  It depends on -- I'm sorry.
```

G6O3WILS                        Sentence

1          (Defendant conferring with his counsel)

2          MR. DRATEL:  It's 15 to life, your Honor, is the

3    maximum.

4          THE COURT:  Okay.

5          MR. DRATEL:  And --

6          THE COURT:  This is not a case where the federal

7    sentence dwarfs the possible state sentence.

8          MR. DRATEL:  No, your Honor, but the question then

9    becomes, to make it consecutive or concurrent is if a sentence

10   in the state court is in excess of the federal sentence, is

11   that extra time going to be rehabilitative or is it going to be

12   useful, is it going to accomplish anything, other than perhaps

13   adding to either the state or federal budget problem.

14         THE COURT:  I've always thought that if there is a yet

15   undetermined sentence, it's the second judge who should make

16   the determination of consecutive or concurrent, because there

17   are determinations with respect to, for example, what total

18   amount of prison is appropriate for purposes of deterrence for

19   the defendant, a determination that the first sentencing judge

20   simply doesn't know.  Can't know.

21         MR. DRATEL:  Yes.  And I guess also the last thing I

22   would say, just sort of procedural things, substance abuse

23   obviously has been an issue in Mr. Williams' life, so an RDAP

24   recommendation for programming we think would be appropriate.

25   And as far as designation, we're in a little bit of a dilemma

G6O3WILS                    Sentence

```
1   because I think it is actually, you know, there's a question of
2   continuity of care, making sure he gets back to the hospital.
3   But I don't think -- I don't think that would be after the
4   designation process.  If the designation process goes by the
5   ordinary amount.  I would hope he would stay at MCC and not go
6   to MDC, so that would not interfere with the schedule or the
7   particular hospital that he goes to, because the continuity of
8   care I think, given the issues that he's experienced thus far,
9   is an important factor.
10          So, all of that put together, your Honor, is at the
11  very worst, the bottom of the guidelines, but we think below
12  the bottom of the guidelines, would accomplish the same, and
13  the incremental effect of a few months here or a few months
14  there should be weighed in the context of sufficient but not
15  greater than necessary.  There is really no basis for saying
16  they would be necessary rather than sufficient.  So that's why
17  we ask for a sentence below the guidelines.
18          Thank you, your Honor.
19          THE COURT:  Thank you, Mr. Dratel.  Mr. Williams, have
20  you reviewed the presentence report, the recommendation, and
21  the addendum and discussed them with your lawyer?
22          MR. DRATEL:  Your Honor, may he remain seated?
23          THE COURT:  Sure.
24          MR. DRATEL:  Because of his ankle.
25          THE DEFENDANT:  Yes, sir, your Honor.
```

G6O3WILS                        Sentence

```
 1              THE COURT:  Do you have any objections?
 2              THE DEFENDANT:  Excuse me?  I didn't hear you, sir.
 3              THE COURT:  I'm sorry?
 4              THE DEFENDANT:  I didn't hear you, sir.
 5              THE COURT:  Do you have any objections?
 6              THE DEFENDANT:  No, sir.
 7              THE COURT:  I'll listen to you for anything you want
 8    to tell me in connection with sentence, any statement you'd
 9    like to make, anything at all you'd like to tell me.
10              THE DEFENDANT:  Yes, sir.  I'd like to apologize for
11    all my wrongdoings.  I'd like to apologize for whoever I may
12    have hurt and the crimes I committed.  And I just pray to God
13    for forgiveness, and I just hope my family will still have
14    faith in me after all this is said and done.  That's it, your
15    Honor.
16              THE COURT:  All right.  Thank you.
17              Mr. Beaty, has the government reviewed the presentence
18    report, the recommendation and the addendum?
19              MR. BEATY:  Yes, your Honor.
20              THE COURT:  Does the government have any objections?
21              MR. BEATY:  No, your Honor.
22              THE COURT:  Do you have a proposed restitution order
23    for me?
24              MR. BEATY:  Your Honor, I submitted that to the Court
25    in advance.  I don't believe I have a hard copy here with me.
```

G6O3WILS                         Sentence

1     But I can certainly bring a hard copy to chambers immediately

2     after.

3              THE COURT:  Was the proposed restitution order one

4     that was agreed to by the defendant in terms of form?

5              MR. BEATY:  It was -- in terms of form it was not

6     discussed with the defendant.  As the Court noted and as

7     Mr. Dratel noted, I believe the percentage differs from what

8     the Court intends to impose.  So I'm happy to make that change

9     and bring a revised proposed order to the Court.

10             THE COURT:  The forfeiture order includes a payment

11    schedule.

12             MR. BEATY:  No, I'm sorry.  Restitution order that you

13    mentioned.  Proposed orders for both were submitted in advance

14    to the Court.

15             THE COURT:  Okay.  Well, thank you.  So, you submitted

16    a proposed forfeiture order and a proposed restitution order?

17             MR. BEATY:  That's correct, your Honor.

18             THE COURT:  And the only difference on the proposed

19    restitution order is the payment schedule?

20             MR. BEATY:  That's my understanding, although I have

21    not discussed the form of the order with Mr. Dratel.  It was

22    submitted to him at the same time it was submitted to the

23    Court.  So I don't know whether he has any objections to the

24    form.

25             MR. DRATEL:  Just the 20 percent, your Honor.  That's

G6O3WILS                        Sentence

1    paragraph three of the restitution order.  We object to the

2    20 percent.

3             THE COURT:  Okay.

4             MR. DRATEL:  Thank you, your Honor.

5             THE COURT:  I intend to do 10 percent of the

6    defendant's gross monthly income per month beginning 30 days

7    after release from incarceration.  So the order with that

8    change is mutually agreed on.

9             Have you put it on ECF?  Because I can just download

10   it from ECF.

11            MR. BEATY:  It was submitted by e-mail to chambers.  I

12   believe it was also put on ECF, but as I stand here today I'm

13   not entirely sure.  It was certainly submitted by e-mail to

14   chambers.

15            THE COURT:  We'll try and retrieve it from e-mail.

16            MR. BEATY:  I'm happy to bring a hard copy if the

17   Court would like later today.

18            THE COURT:  That would be fine.

19            MR. BEATY:  Okay.

20            THE COURT:  Does the government have any objections?

21   Has the government reviewed the presentence report and the

22   addendum?

23            MR. BEATY:  Yes, your Honor, and have no objections.

24            THE COURT:  All right.  I'll listen to you for

25   anything you would like to tell me in connection with sentence,

1  any statement you'd like to make, anything at all you'd like to

2  tell me.

3              MR. BEATY:  Yes, your Honor.  Just briefly, this

4  defendant was involved with a very large fraud scheme for the

5  entirety of the two years that were investigated.  From

6  January 2012 through December 2013, he was involved in both the

7  rental fraud scheme and the EBT fraud scheme.  He, in that

8  fraud, he played a managerial role.  He recruited others, he

9  coordinated putting money on EBT cards, he coordinated in

10  making purchases with those cards, fencing the items that were

11  bought, and ultimately turning the benefits into cash.

12             He's only one of three defendants in this entire

13  12-defendant case that has warranted an enhancement for the

14  role that he played.  He's also, after Cherrise Watson-Jackson,

15  the second defendant in terms of loss amount that was

16  foreseeable to him.

17             His involvement was at a very high level in this

18  scheme.  He's not someone who simply got recruited and caught

19  up.  He's someone who for a long period of time played an

20  integral role in the scheme.  And we think, your Honor, that

21  his sentence should reflect that role.  And for that reason, a

22  sentence at the top of the guidelines is warranted.

23             Separate and apart from that, a sentence at the top of

24  the guidelines range is warranted because of the defendant's

25  criminal history.  The specific deterrence here is I think more

G6O3WILS                    Sentence

 1   important than it is in many cases, because of the defendant's

 2   long criminal history.  When he committed the crimes that he's

 3   pled to here, he had just gotten out of jail for a nine-year

 4   term.  He was on parole.  And nearly immediately began again

 5   committing crimes.  He's continued to commit crimes --

 6           THE COURT:  He served seven years on his nine-year

 7   term when he was released from state custody, I think.  Right?

 8           MR. BEATY:  I believe that's right.  I don't have the

 9   exact date that he was released.

10           THE COURT:  It's in the presentence report.  And then

11   he violated his parole.

12           MR. BEATY:  That's correct, your Honor.  He violated

13   his parole I believe three times after he was initially paroled

14   in September of 2010.  Paragraph 58 of the PSR.

15           THE COURT:  Right.

16           MR. BEATY:  In addition to those three parole

17   violations, this case reveals that he was also separately

18   violating his parole by committing the crimes that are charged

19   here.  The nine years or the seven years and the additional

20   time that he served for the parole violations did not deter him

21   from continuing to commit crimes.

22           Indeed, he has pending state charges that involve both

23   possession of a forged instrument as well as firearms charges.

24   This is not an isolated incident in which specific deterrence,

25   you know, perhaps the argument could be made specific

G6O3WILS                        Sentence

1    deterrence can be achieved through a small sentence.  The

2    government submits that a sentence at the top of the guidelines

3    range will send a strong message to the defendant that ongoing

4    criminal activity will not be tolerated.

5            In terms of the consecutive versus concurrent sentence

6    as to the state charge, for the reasons stated in the

7    government's submission, the government believes that that

8    should be consecutive.  The state charge is entirely unrelated

9    to this case here and involves guns.  And the government

10   submits that any deterrent effect as to this case should be

11   imposed consecutively.

12           At the same time, given the Court's comments, the

13   government would ask that the Court at least not impose this

14   sentence concurrently.  At the very least, to not say which way

15   the Court is going, and leave that up to the state court.

16           Unless the Court has any further questions, the

17   government will rely on its submission.

18           THE COURT:  All right.  Thank you.

19           MR. DRATEL:  Your Honor, may I just?

20           THE COURT:  Yes, Mr. Dratel.

21           MR. DRATEL:  Thank you.  In addition to all, he's also

22   the first defendant to plead guilty in this case and accept

23   responsibility.

24           THE COURT:  I'm sorry?

25           MR. DRATEL:  He was also the first defendant to plead

G6O3WILS                     Sentence

1    guilty in this case and accept responsibility and to resolve

2    this case.  Also, you know, all of these issues are already

3    factored into the guidelines.  So for example, his criminal

4    history, instead of -- if his criminal history were I, he would

5    be 30 to 37 months.  If he did not get a leadership role, he

6    would be at 21 to 27 months.  All these things are already

7    factored in, so they shouldn't raise his sentence above the

8    minimum of the guidelines.

9            If you look at the vast distribution of sentences in

10   this district, in this circuit, and the trend even nationally

11   now for the first time, we have the guidelines being a minority

12   of cases.  That it would be more than sufficient and certainly

13   greater than necessary to go beyond that.

14           Thank you, your Honor.

15           THE COURT:  Thank you, Mr. Dratel.  I'll place the

16   presentence report, the recommendation, and the addendum in the

17   record under seal along with the parties' submissions.  The

18   parties should make sure that their submissions are in the

19   record after redacting any personal identifying information.  I

20   see that the government's submission already is in the record,

21   the defendant's June 23 submission is in the record.  I'm not

22   sure if the defendant's original submission is in the record.

23   If it isn't, the defendant should put it in the record after

24   redacting the personal identifying information.

25           I adopt the findings of fact in the presentence

report.  Therefore, I conclude that under the current guidelines the total offense level is 19, the criminal history category is III, and the guideline sentencing range is 37 to 46 months.

I appreciate that the guidelines are only advisory, and that the Court must consider the various sentencing factors in 18 U.S.C. Section 3553(a) and impose a sentence that is sufficient, but no greater than necessary, to comply with the purposes set forth in Section 3553(a)(2).

In this case, the offense is egregious.  While it is a fraud offense, and it did not involve violence or controlled substances, it was fraud involving two public welfare programs. It involved fraud against a public agency whose objective is to assist those in need of assistance.  It stole from funds that should have been used to assist the poor.

Moreover, the amounts involved in the offense were significant.  The offense was all the more serious because it was committed while the defendant was on parole from a serious robbery conviction in the state system.  Soon after the defendant was released from a long term of imprisonment in the state system, he engaged in the current scheme.

Therefore, there are significant reasons that a significant sentence is needed for purposes of personal deterrence and protection of the public, as well as recognizing the seriousness of the offense.

G6O3WILS                            Sentence

1          The defendant points to his difficult childhood and

2     his support from family members.  But neither of those factors

3     are sufficient to mitigate the need for a significant sentence

4     to accomplish the needs of sentencing.

5          The government asks for a sentence at the top of the

6     advisory guideline range, and one which is consecutive to the

7     sentence that the defendant may face for the state court

8     charges that he is currently facing.

9          This is a case where, taking all of the factors into

10    account, a sentence of 37 months on Count One is sufficient,

11    but no greater than necessary, to accomplish all of the goals

12    of sentencing, to be followed by a three-year term of

13    supervised release with the standard conditions of supervised

14    release in this district and those recommended by the probation

15    department.

16         In arriving at a sentence of 37 months, the Court

17    takes into account the mitigating factors that the defendant

18    has relied upon.  The Court is aware of the defendant's

19    physical condition.  The Court is aware of the difficulties of

20    treatment within the prison system.  The Court is aware of the

21    defendant's difficult background.  Nevertheless, the sentence

22    of 37 months is sufficient, but no greater than necessary, to

23    accomplish the goals of sentencing.

24         The Court will not impose a fine because the defendant

25    lacks the ability to pay a fine, after taking into account the

presentence report.  The Court will impose a $100 special

assessment.

          The Court will impose restitution in the amount of

$291,550 payable to the New York City Human Resources

Administration.  Restitution is payable at the rate of

10 percent of the defendant's gross monthly income beginning 30

days after release from imprisonment.  Restitution is payable

joint and severally with all other others responsible for the

loss.

          Defendant will also forfeit $437,325 to the

government.  Forfeiture is also joint and several with all

others responsible for the loss.

          The Court will recommend incarceration in the New York

City area so that the defendant can be close to his family.

The Court will also recommend that the defendant be admitted to

the intensive Residential Substance Abuse Treatment Program of

the bureau of prisons.

          With respect to the government's request that the

Court order that the sentence be consecutive to the defendant's

prospective state court conviction, the Court declines to do

so.  The Court will not make a recommendation at this time as

to whether the federal sentence should be concurrent or

consecutive to the state court sentence.

          The Court is prepared, of course, to respond to any

inquiries from the bureau of prisons with respect to the

service of the defendant's federal sentence.  The defendant has

not yet been convicted in state court, and may not be sentenced

to any time in the state court, in which case the defendant

will have served time for which the defendant should be

credited toward his federal sentence.

If the defendant is eventually sentenced in state

court, it will be for the state court judge to determine in the

first instance whether the state sentence should be concurrent

or consecutive to the federal sentence.  Concurrent or in

addition to the federal sentence, and to arrive at the

appropriate way for the service of the sentence.

The state court judge will be in the best position to

determine such things as the total amount of time that the

defendant would face from the federal and from the state

sentence.  Even though the crimes are separate, the court could

not ignore the total amount of time of incarceration that would

be imposed on the defendant.  The state court judge will have

to determine in the first instance what additional, if any,

incarceration is appropriate for the fact that, if the

defendant is being sentenced in state court, what additional

time is necessary for the state court charge.

Therefore, the Court will not make a recommendation at

this time with respect to whether the federal sentence should

be concurrent or consecutive to the state court sentence.  But

of course, the Court would respond to any inquiries from the

1    bureau of prisons.

2           The sentence is consistent with the factors in Section

3    3553(a), and is sufficient but no greater than necessary to

4    comply with the purposes of Section 3553(a)(2).  It recognizes

5    the seriousness of the offense and the need for deterrence and

6    protection of the public.  It fully takes into account all of

7    the mitigating circumstances advanced by the defendant.

8           I've explained the reasons for the sentence.  Before I

9    actually impose the sentence, Mr. Dratel, I'll recognize you

10   for anything you wish to tell me.

11          MR. DRATEL:  Nothing, your Honor.  Thank you.

12          THE COURT:  Mr. Williams, before I actually impose the

13   sentence, I'll recognize you for anything you wish to tell me,

14   anything you'd like to say in your own behalf, anything at all

15   you'd like to tell me.

16          THE DEFENDANT:  No, thank you, your Honor.

17          THE COURT:  Mr. Beaty, I'll recognize you for anything

18   the government wishes to tell me.

19          MR. BEATY:  Nothing, your Honor.  Thank you.

20          THE COURT:  All right.  Pursuant to the Sentencing

21   Reform Act of 1984, it is the judgment of this Court that the

22   defendant, Derrick Williams, is hereby committed to the custody

23   of the bureau of prisons to be imprisoned for a term of 37

24   months on Count One.

25          I recommend incarceration in the New York City area so

1    that the defendant can be close to his family.  I recommend

2    that the defendant be admitted to the intensive Residential

3    Substance Abuse Treatment Program of the bureau of prisons.

4            Upon release from imprisonment, the defendant shall be

5    placed on supervised release for a term of three years.  Within

6    72 hours of release from the custody of the bureau of prisons,

7    the defendant shall report in person to the probation office in

8    the district to which the defendant is released.

9            While on supervised release, the defendant shall

10   comply with the standard conditions of supervised release in

11   this district.  The defendant shall not commit another federal,

12   state, or local crime; the defendant shall not possess a

13   firearm or destructive device as defined in 18 U.S.C. Section

14   921; the defendant shall refrain from any unlawful use or

15   possession of a controlled substance.  The defendant shall

16   submit to one drug test within 15 days of release from

17   imprisonment, and at least two periodic drug tests thereafter

18   as directed by the probation officer.  The defendant shall

19   cooperate in the collection of DNA as directed by the probation

20   officer.

21           The defendant will participate in an outpatient

22   treatment program approved by the United States probation

23   office, which program may include testing to determine whether

24   the defendant has reverted to the use of drugs or to alcohol.

25   The defendant shall contribute to the cost of services rendered

1    based on the defendant's ability to pay and the availability of

2    third-party payments.  The Court authorizes the release of

3    available drug treatment evaluations and reports, including the

4    presentence investigation report, to the substance abuse

5    treatment provider.

6           The defendant shall provide the probation officer with

7    access to any requested financial information.  The defendant

8    shall incur no new credit charges or open additional lines of

9    credit without the approval of the probation officer, unless

10   the defendant is in compliance with the installment payment

11   schedule.

12          The defendant shall submit his person, residence,

13   place of business, vehicle, or any other property or electronic

14   devices under his control to a search on the basis that the

15   probation officer has reasonable suspicion that contraband or

16   evidence of a violation of the conditions of the defendant's

17   supervised release may be found.  The search must be conducted

18   at a reasonable time and in a reasonable manner.  Failure to

19   submit to a search may be grounds for revocation.  The

20   defendant shall inform any other residents that the premises

21   may be subject to search pursuant to this condition.

22          The defendant shall notify the United States attorney

23   for this district within 30 days of any change of mailing or

24   residence address that occurs while any portion of the

25   restitution remains unpaid.

1          The defendant shall pay restitution in the amount of

2   $291,550 payable to the New York City Human Resources

3   Administration.  Restitution is payable at the rate of

4   10 percent of the defendant's gross monthly income beginning 30

5   days after release from incarceration.  Restitution is joint

6   and several with any others responsible for the loss.

7          The defendant shall pay forfeiture in the amount of

8   $437,325.  Forfeiture is also joint and several with any other

9   persons responsible for the loss.

10          It is further ordered that the defendant shall pay to

11   the United States a special assessment of $100 which shall be

12   due immediately.

13          I've already explained the reasons for the sentence.

14   Does either counsel know of any legal reason why the sentence

15   should not be imposed as I've so stated it?

16          MR. BEATY:  No, your Honor.

17          MR. DRATEL:  No, your Honor.

18          THE COURT:  All right.  I'll order the sentence to be

19   imposed as I've so stated it for all the reasons that I've

20   explained.

21          There is a waiver of the right to appeal the sentence,

22   yes?

23          MR. BEATY:  Yes, your Honor.

24          THE COURT:  Does either counsel know of any legal

25   reason why the waiver is not effective?

G6O3WILS                      Sentence

1          MR. BEATY:  I do not, your Honor.

2          MR. DRATEL:  No, your Honor.

3          THE COURT:  Mr. Williams, the reason that I ask these

4    questions is that, generally, a defendant has the right to

5    appeal the sentence.  The notice of appeal must be filed within

6    14 days after the entry of the judgment of conviction.  The

7    judgment of conviction is entered promptly after the judge

8    announces the sentence.  So, you should discuss this issue

9    promptly with your lawyer.  If the defendant cannot pay the

10   cost of appeal, the defendant has the right to apply for leave

11   to appeal in forma pauperis.  If the defendant requests, the

12   clerk will prepare and file a notice of appeal on the

13   defendant's behalf immediately.  And the rules require that a

14   judge inform the defendant of this right to appeal.

15         Now, in this case, the parties tell me that you had

16   given up or waived your right to appeal the sentence.  So it

17   appears that you have waived your right to appeal the sentence.

18   But, I go over this with you now because I want to make sure

19   that you talk about this with your lawyer so that you're fully

20   informed of all of your rights.  Do you understand what I've

21   said?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  Okay.  Open counts?

24         MR. BEATY:  There are none, your Honor.  But in an

25   excess of caution, the government moves to dismiss any open

G6O3WILS                         Sentence

1      counts against the defendant.

2                   THE COURT:  Right.  And the defendant agrees?

3                   MR. DRATEL:  Yes, your Honor.

4                   THE COURT:  All open counts against the defendant are

5      dismissed on the motion of the government.  Anything else?

6                   MR. BEATY:  Not from the government, no, your Honor.

7                   MR. DRATEL:  No, your Honor.  Thank you.

8                   THE COURT:  Okay.  Good morning, all.

9                                    o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25